ARKANSAS REAL ESTATE COMPANY, INC. *v.* KEATON.

4-8833                                    220 S. W. 2nd 129

Opinion delivered April 25, 1949.

Rehearing denied May 30, 1949.

*John R. Thompson* and *Wm. J. Kirby*, for appellant.

*Buzbee, Harrison & Wright,* for appellee.

ED. F. McFADDIN, Justice. Appellant and appellee were rival claimants to the ownership of a tract of approximately six acres lying on the outskirts of Little Rock. The original owner—insofar as concerns this suit—was W. W. Wilson. Appellee claimed title by virtue of a warranty deed from the heirs of Wilson; appellant claimed by virtue of (1) a tax title and (2) a deed from Fred Durst, who—appellant contends—acquired title by adverse possession against Wilson.

Appellee (as plaintiff) filed suit in the Chancery Court, and deraigned his own title and asked that it be quieted. Appellant corporation (as defendant) filed a general denial, and also affirmatively asserted Durst's adverse possession and his deed to the defendant. The

prayer of the answer was that the defendant's title be quieted. From a decree quieting the plaintiff's title, the defendant brings this appeal.

I. *Defendant's Tax Title.* Before this Court the defendant is seeking to prevail on its tax title because of plaintiff's failure to offer any proof of the invalidity of the tax forfeiture. In the complaint it was alleged that the defendant acquired a deed from the State in 1946, that the State's claim was based on a 1932 tax forfeiture, that the tax forfeiture was void, and that a tender had been made of all taxes. The plaintiff alleged, as one of the reasons for the invalidity of the 1932 tax forfeiture, that the tax sale price included a tax of 5/8ths of a mill[1] for the Firemen's Pension and Relief Fund of Little Rock, and that this was in excess of the five mills allowed for city purposes.

In its answer defendant denied generally all allegations of the complaint, and the effect of this denial extended not only to the invalidity of the tax sale, but also to the existence of the tax deed. So, if the invalidity of the sale was not proved, neither was the existence of the defendant's tax deed established. The alleged deed from the State to defendant was never introduced in evidence. Neither was there any sufficient attempt to prove that the defendant had such deed. All that appears on this point, in the transcript, is an exhibit prepared by the Pulaski County Clerk, showing the record of tax payments by W. W. Wilson and his estate from 1914 to 1932; and this exhibit says of the land here involved: "This call was sold to the State for the 1932 tax. . . . This call was bought in by Arkansas Real Estate Company."

The foregoing quoted statements are contradictory, since at the collector's sale the land could not have been "sold to the State", and at the same time be "bought in by the Arkansas Real Estate Company." Furthermore, this tax record statement does not negative a pos-

[1] As a matter of information (not proved in this case) we call attention to the fact that in each of the cases, *Adamson* v. *Little Rock*, 199 Ark. 435, 134 S. W. 2d 558, and in *Schuman* v. *Walthour*, 204 Ark. 634, 163 S. W. 2d 517, we held to be void a tax sale which included this item.

sible redemption; and is entirely inadequate proof that a deed of any kind was ever issued by the clerk, either to the State or the Arkansas Real Estate Company.

From the condition of the record before us, we conclude that the defendant abandoned in the trial court all reliance on its alleged tax title, and that such abandonment accounts for the failure of the plaintiff to prove the invalidity of the tax sale. We are strengthened in this conclusion by the existence of a stipulation made between the parties during the course of the trial, and reading: "It will be ascertained from the State Land Commissioner what taxes are due on this land based on the assessment that they forfeited for in 1932 down to the present time, and Mr. Keaton will pay that amount into the registry of the court."

The fact that defendant stipulated "what taxes *are* due", and that such amount might be paid into the registry of the court, indicates that the defendant was not then claiming that it had paid all taxes under a valid tax deed based on any forfeiture. We therefore hold the defendant abandoned its tax title claim in the trial court, and cannot rely on it in this Court.

II. *Defendant's Title Acquired from Durst.* On March 27, 1947, Fred Durst executed a quitclaim deed to the defendant; and the real issue in the trial court was whether Durst had acquired the property by adverse possession so as to invest the defendant with a title.

Durst testified that he held the land adversely for many years (in excess of seven) before making the deed to defendant; but Durst's testimony was successfully impeached. It was shown that prior to the institution of this suit, Durst had informed other people that he never claimed any interest in the land, and had all the time occupied it by permission of Wilson. Besides Durst, other witnesses called by the defendant testified that Durst used the land for pasture purposes; but such testimony by these other witnesses was inconclusive, and insufficient to establish that Durst's possession was adverse rather than permissive.

From the evidence, the Chancery Court might well have found that Durst's possession was originally by permission of Wilson, and never became adverse within the purview of our cases, such as *Dial* v. *Armstrong*, 195 Ark. 621, 113 S. W. 2d 503; *Norman* v. *Sharp*, 206 Ark. 744, 177 S. W. 2d 401; *Masters* v. *Haynes*, 169 Ark. 1177, 278 S. W. 12; and *Fry* v. *Grismore*, 151 Ark. 4, 235 S. W. 373. See, also, other cases collected in West's Arkansas Digest, "Adverse Possession", § 85(4). We cannot say that the decree of the Chancery Court is against the preponderance of the evidence. There remains in the registry of the Chancery Court the tax money deposited by appellee, which may now be distributed.

Affirmed.