CHICOT LUMBER COMPANY *v.* DARDELL.

Opinion delivered October 21, 1907.

1. ADVERSE POSSESSION—SUFFICIENCY.—Evidence that a tax purchaser of land openly maintained a stave camp upon it and kept men upon the land continuously for more than two years, cutting and removing

stave timbers, and that there was no other occupancy of the land, shows sufficient possession, under Kirby's Digest, § 5061, to give title. (Page 143.)

2. EQUITY—JURISDICTION TO ADMINISTER COMPLETE RELIEF.—Under the rule that where equity has properly taken jurisdiction of an equitable suit it is competent to adjudicate all the issues therein, both legal and equitable, relating to the subject-matter of the controversy, where an injunction was brought to restrain defendant from cutting timber on land claimed by plaintiff, equity had jurisdiction of a cross suit by defendant asking damages for timber converted by plaintiff. (Page 144.)

3. INJUNCTION—DAMAGES ON DISSOLUTION.—Although Kirby's Digest, § 3998, authorizes the assessment of damages against one who applies for an injunction only where proceedings upon a judgment have been stayed, this does not prevent the defendant in other cases from filing a cross complaint asking for the recovery of damages growing out of the issuance of the injunction. (Page 145.)

Appeal from Chicot Chancery Court; *James C. Norman,* Special Chancellor; affirmed.

*June P. Wooten* and *Baldy Vinson,* for appellant.

1. Appellees' claim that the land was in their possession for two consecutive years is not sustained by the proof. Cutting timber alone, even for two years continuously, would not be sufficient to constitute adverse possession in this State. 68 Ark. 551; 49 Ark. 266. And appointing an agent to look after land, who goes upon it only occasionally, falls short of the actual possession required by law. 64 Ark. 100.

2. The sale of the lands for non-payment of taxes of year 1889 to the State was void. Kirby's Digest, § 7083; 66 Ark. 422; 70 Ark. 326; 60 Ark. 63; 65 Ark. 595; 55 Ark. 218; 68 Ark. 248; 61 Ark. 36; Kirby's Digest, § 7086; *Id.* § 7092; 70 Ark. 326.

3. The State, having no title to the lands, could convey none to Dardell, nor did he acquire title by two years' actual, adverse and continuous possession; and, he having no title and not being in possession, Roderick's action in breaking appellant's fence, etc., constitutes a mere trespass and waste, which did not dispossess appellant, and which equity would enjoin. 40 Ark. 192. There was no ouster of appellant. 4 Mass. 416, 3 Am. Dec. 227.

4. The chancery court was without jurisdiction to assess damages for the wrongful suing out of the injunction. Kirby's

Digest, §§ 3998-9, 3940. If wrongfully obtained, the remedy was by suit on the bond. 52 Ark. 534; 48 Ark. 21.

*Bolton & Kirten* and *Garland Streett,* for appellees.

1. The object of an injunction is to maintain the *status quo* of the parties until the final decision of the suit, and the plaintiff, having obtained an injunction, will not upon its dissolution be permitted to take advantage of any rights which he has thus wrongfully prevented his adversary from enjoying. 76 Ark. 48; 6 Vesey Jr. 73; 2 Daniell's Ch. Pr., 5 Ed., 1639 and note; 134 Ill. 603.

2. If it be conceded that appellants had title prior to 1889, they, having permitted the land to forfeit in that year, and having failed thereafter for thirteen years to pay taxes thereon, permitting appellees to purchase the same and bear the burden of tax payments for that length of time, with full knowledge of appellees' claim, were barred under the doctrine of laches from asserting any claim in 1902.

The enclosure by Wood & Mathews is shown by a clear preponderance to have been made by consent of Dardell, and for his benefit. Possession, however long continued, is not adverse unless accompanied and evidenced by a claim of title. 59 Ark. 626; 77 Ark. 201.

3. The possession of Dardell's employee, Davis, for more than two years constituted a complete bar to any claim adverse to Dardell after the expiration of that time. 76 Ark. 447; Kirby's Digest, § 5051; 58 Ark. 151; 59 Ark. 460; 71 Ark. 390; 75 Ark. 514; 76 Ark. 442.

The acts done upon the land, in constructing a house, sinking a well, manufacturing timber into staves, fencing a lot in which to keep stock, were sufficiently notorious and open to put an owner on notice of an adverse claim, and, being continued for two years, perfects title. 98 Ala. 181; 56 Ala. 449; 90 Mich. 50. Possession of part under color of title is possession of the whole. 80 Ark. 435; 71 Ark. 390; 75 Ark. 395; 78 Ark. 99; 18 Ill. 539. See also, 75 Ill. 51; 89 Ill. 183; 18 Neb. 619; 20 Mich. 384; 47 Tex. 529.

Damages were not assessed for the wrongful suing out of the injunction, hence the statute and authorities cited by appel-

lant do not apply. The chancery court having jurisdiction of the subject-matter of the suit and of the parties, it was its duty to settle all the rights of the parties thereto. Appellees are not remitted to a suit on the bond. 37 Ark. 286; 75 Ark. 52; 77 Ark. 570.

HILL, C. J. The Bliss-Cook Oak Company, successor in title to the Chicot Lumber Company, was the owner of a large body of timbered land in Chicot County, and within the limits of its holdings were the four hundred acres of land in controversy. Assuming, without deciding, that the Lumber Company had title to this tract also, the first question is whether Dardell's title under deed from the State should prevail over the fee title. The land was forfeited for the taxes of 1889, and sold to the State. The tax sale was void for numerous reasons. Dardell purchased the State's title on the 10th of August 1894, and received a deed from the State Land Commissioner on that date, and recorded same on August 21st, 1894. The chancellor found that Dardell had two years' actual possession under said deed, and the facts authorizing this finding were as follows:

In September or October following his purchase in August, Dardell went upon the land with a surveyor, who ran out the lines, and located a camp suitable for stave making. Dardell placed one Tom Davis in charge of the camp. This camp consisted of a log cabin, covered with cypress boards. It had a mud chimney and a door provided with a lock. The cabin was large enough to accommodate eight or nine men, and that number occupied it at various times during the stave making. There was a lot for horses, a well was dug and put in use, and a large quantity of timber was cut down and made into staves. Davis lived about four miles and a half from this camp, and for over two years he lived in the camp during the week and joined his family on Saturdays, remaining until the first of the next week. He had with him various laborers, engaged in making staves, and some one would be left in charge when he went to his home. Dardell visited the camp during this time once or twice a month overseeing the work. This occupancy of Davis continued until his death, which was two or three years after he was placed in charge of the camp. There was no other occupancy of the tract, and no one lived within four miles of this camp. This possess-

ion was sufficient, under section 5061, Kirby's Digest, to give title. *Sparks* v. *Farris,* 71 Ark. 117; *Boynton* v. *Ashabranner,* 75 Ark. 514; *Carpenter* v. *Smith,* 76 Ark. 447.

It is true that this camp was of a temporary character, and was abandoned some time after the two years had run. But while the possession of Davis for Dardell lasted, it was open, notorious, hostile and adverse to all the world. The cutting of the timber and its manufacture into staves on the property by a large force of employees was a daily assertion of ownership of the property. This was done openly, and the staves hauled from the land to the railroad. All these acts were hostile to the owner of the title. A foreign flag was flying in the middle of his domain, and it was kept flying until the statutory time required by the nature of the title asserted by Dardell, was completed. This vested the title in Dardell, and the subsequent abandonment of the camp could not affect the title thus perfected.

The Lumber Company claims that, even if Dardell's title was perfected, it has acquired a title by adverse possession for seven years subsequent to the death of Davis and the abandonment of the camp. A large tract of land was fenced by Wood and Matthews as a pasture. Some half dozen sections of the land were leased from the Lumber Company to them for this purpose, including the land in question. There is a conflict in the testimony as to whether this large pasture fence which included this land was built in 1897 or 1898. This suit was brought in November, 1904. If the fence was built in 1897, it would be in time for the seven years' statute to run. There is substantial testimony that Wood and Matthews got permission from Dardell as well as from the Lumber Company to build the fence. In that event their fence would not be hostile to Dardell's title. There is also substantial testimony that the fence was not kept up for the last three or four years.

The chancellor's finding was against adverse possession having been acquired by the Lumber Company after Dardell's title was perfected, and it can not be said that his finding is against the preponderance of the evidence.

The chancellor gave judgment on cross complaint of Dardell against the Lumber Company for the value of the timber and staves converted by it while in possession of the land, and it

is insisted that this is awarding damages on the dissolution of an injunction, contrary to the statute (Kirby's Digest, § 3998), as construed in *Greer* v. *Stewart,* 48 Ark. 21; *Stanley* v. *Bonham,* 52 Ark. 354.

The Lumber Company did obtain an injunction against Dardell, and those claiming under him, from cutting timber on the land or removing any timber therefrom, and thereafter it cut timber therefrom, and took possession of about 42,000 staves manufactured by Dardell, most of which it sold in the market, and the balance was permitted to rot.

Dardell answered, and filed a cross complaint against the plaintiff, asserting title in himself, asked that it be quieted, and also asked for damages for the timber and staves converted by the Lumber Company.

The chanceller's finding as to the value of the timber and staves converted is sustained by the evidence. If there had been no injunction in the case, Dardell's right would have been clear to have recovered the value of the timber cut from his land and staves converted by the Lumber Company to its own use. The fact that there was an injunction, which may or may not have aided the Lumber Company in making this conversion, will not prevent Dardell having redress therefor exclusive of a possible remedy upon the injunction bond. This is purely a legal right arising in an equitable suit. Equity having properly taken jurisdiction of an equitable action, it was competent to adjudicate all the issues therein, both legal and equitable relating to the subject-matter of the controversy. *Cribbs* v. *Walker,* 74 Ark. 104; *Norman* v. *Pugh,* 75 Ark. 52; *Dickinson* v. *Ark. City Imp. Co.,* 77 Ark. 570; *Bush* v. *Prescott & N. W. Ry. Co.,* 83 Ark. 210.

The damages asked in the cross complaint of Dardell are not dependent upon the conduct of appellant in obtaining the injunction, and their recovery is not dependent upon the dissolution of the injunction, and no remedy is sought upon the injunction bond. It is simply a legal right to recover the value of the timber and staves which were wrongfully taken from realty proved to be Dardell's, and not the Lumber Company's. The rule invoked does not apply.

Judgment is affirmed.