## Gee v. Hatley.

### Opinion delivered October 12, 1914.

1. TRIAL—INSTRUCTED VERDICT—QUESTIONS OF FACT.—To authorize the court to withdraw from the jury the questions of fact involved in the litigation, it is essential that, at the conclusion of all the evidence in the case, the plaintiff and defendant should each request the court to direct the verdict, and this request must not be accompanied by any request for instructions to the jury which would require the jury to determine any controverted question of fact.

2. ADVERSE POSSESSION—POSSESSION OF DEFENDANT—QUESTION FOR JURY. —In an action to recover the possession of certain land, where defendant denied that its possession was permissive, but alleged, and offered proof, that it was hostile and adverse, the issue should be submitted to the jury.

3. EVIDENCE—TITLE TO LAND—CHURCH—TAXES.—In an action by a church to recover possession of land, evidence of the payment of taxes by the defendant and his vendees is admissible, although a church is not charged with the payment of taxes.

4. ADVERSE POSSESSION—EVIDENCE—NOTICE TO OWNER.—Where B. entered upon certain premises belonging to appellee by permission, the presumption is that his subsequent possession and that of those claiming under him was also permissive, but this may be overthrown by evidence that the possession was adverse.

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

This suit was brought by the Presbyterian Church, through its trustees and elders in Prescott, Arkansas, to recover possession of a portion of lot 6, block 36, of the Railroad Survey of the town of Prescott, Arkansas.

The original title of the church to the lot was not disputed, in fact, the defendants claimed title through mesne conveyances from the trustees of the church as well as by adverse possession.

On April 13, 1889, the church, through its officers, sold to one James T. Brooks, forty-four feet off the back end of this lot. Brooks entered into the possession of the land which he had bought and enclosed it, together with sixteen additional feet, and remained in possession of the entire sixty feet of the lot until June 7, 1899, at which time he executed a deed to the entire sixty feet, and the defendants acquired the title of his vendee by mesne conveyances.

At the trial in the court below, the plaintiffs introduced certain deeds through which they claimed title, together with an agreed statement of facts relating thereto, which, together, were sufficient to establish a *prima facie* right to recover the possession of the land in controversy, and rested their case. Whereupon the defendants requested the court to direct a verdict in their favor. It does not appear upon what ground this request was made, and the court properly declined to grant it.

The defendants then offered their evidence in support of the allegations of their answer. This answer had been amended to allege that the deed to Brooks through which they claimed had inadvertently failed to describe all of the land conveyed to him, and that this deed should, in fact, have described the entire sixty feet, which description would have included all of the land in controversy; but this allegation was abandoned, and no evidence was offered to substantiate it, and the defendants offered evidence only in support of their plea that they and their predecessors in title, back to and including the said J. T. Brooks, had been in the open, adverse, exclusive and continuous possession of said land for a period of more than twenty years, and that they had kept it under fence and paid the taxes thereon without interruption during all of this time without any question of ownership or possession having been raised until the filing of the complaint herein.

The defendants, and all of their predecessors in title, were present and testified at the trial, except Brooks, who died before the institution of this suit; and these witnesses offered to testify, when called in rebuttal to the evidence offered on behalf of plaintiffs showing the permissive character of their possession, that they had no knowledge of any permissive possession given to Brooks by the church, through which Brooks acquired possession of the sixteen-foot strip of land in controversy, and they each offered to testify that their possession of the land had been as an owner thereof; but, upon the objection of the plaintiffs, this evidence was excluded by the court.

A former pastor of the church testified on behalf of the plaintiffs to the effect that some time after the deed was made to Mr. Brooks, permission was asked by him to enclose more of the church lot than he had bought, and this he was allowed to do in order to prevent people from hitching horses on the lot back of the church. The witness did not remember the exact date of this agreement, but stated that it was more than twenty years ago, somewhere between 1887 and 1897, and that there was no consideration paid for this privilege, but that the right to enclose this strip was granted as a matter of courtesy and to prevent people from driving and hitching their horses and teams near the church.

Another member of the church testified about having had a conversation with Brooks, in which Brooks spoke of the permissive character of his possession.

At the conclusion of all the evidence in the case, the plaintiffs requested the court to direct the jury to return a verdict in their favor, which was done. It does not appear that the defendants made any request for instructions, but the record recites the fact to be that the plaintiffs alone made the motion for a directed verdict. A motion for a new trial, in which various exceptions were saved, having been overruled, this appeal has been duly prosecuted from the judgment of the court awarding the possession of the land to the plaintiffs.

*H. B. McKenzie,* for appellants.

1. If it be conceded that the possession of the original holder was permissive, as alleged by appellee's witnesses, yet the continuous possession under successive holders by warranty deed for a period much longer than the statute requires, with the original holder having only permissive possession of the disputed portion of the land, and his successors holding by deed without notice, with the understanding and belief that they owned what they held, and improved it as such, their possession has ripened into title by adverse possession. 86 N. W. 515; 122 S. W. 403; 136 Ind. 20; 4 Mason 326; Freeman on Co-Tenancy & Partition, § 224; 13 Serg. & R. 358; 13 Me. 337; 20 N. W. 320-329; 144 Mo. 192; 50 S. E. 450, 138 N. C. 35. See, also, 2 Enc. of L. & Pr., 461; 24 Am. St. Rep. 934.

The actual possession of the land, coupled with acts of ownership was notice to the world of the title under which they held. 90 Ark. 149.

A *bona fide* purchaser holds adversely to the world. He may disclaim the title under which he entered, and stay by any other title and any other defense against his grantors and all others. 5 Wall. 268; 16 Pet. 25; 5 Pet. 402; 136 Ind. 20; 92 Ind. 70.

2. Appellants and their predecessors having held possession under deed for more than twenty years, the law will presume that the possession was adverse. 17 Wend. 642; 10 Serg. & R. 182; 9 Watts 363; 29 Pa. 495, 72 Am. Dec. 654; 46 Pa. 376; 1 Coldw. 313.

3. The question of adverse possession is one for the jury to determine, and the court erred in not submitting that question to the jury. 99 Ark. 446; 3 Allen (Mass.) 354; 164 S. W. 728.

As to the character of the acts of ownership, in such cases, it is said that all the law requires is that the acts of dominion shall be of such a character as may be reasonably expected to inform the true owner of the fact of possession and claim of adverse title. 5 Am. St. Rep. 398, and cases cited. See, also, Mees. & W. 355; 77 Tex. 578;

27 Neb. 57; 116 N. Y. 34; 38 Conn. 562; 6 Allen 20; 56 Ala. 444; 37 Minn. 113-115.

*G. R. Haynie* and *McRae & Tompkins,* for appellees.

1. Where one enters into possession of land with the permission of the true owner, the possession can never be adverse until the party in possession disclaims and brings home to the true owner notice of the disclaimer. 1 Cyc. 1032; 43 Ark. 469-485; 33 Ark. 633; 42 Ark. 118; 69 Ark. 562; 20 Ark. 547; 4 Howard 289; 5 Cow. 123, 15 Am. Dec. 451; 58 Am. Dec. 217, 218; 110 N. Y. 543; 41 Md. 81-96; 2 Enc. of Law & Proc. 391, and authorities cited; 34 Ark. 312; 77 Ark. 177; 80 Ark. 444; 84 Ark. 140; 66 L. R. A. 431-434; 32 L. R. A. (N. S.) 939, note; 12 *Id.* 1142, note.

2. As to notice, either actual or constructive, of adverse holding, the burden rests upon the appellants to show it. There is no evidence of any notice in the record. And, as to presumption of notice, that may be rebutted by evidence or circumstances. 1 Jones on Evidence, § § 76-81.

The record of a deed which is not in line of a party's title is not constructive notice to him. 99 Ark. 446; 69 Ark. 95; 76 Ark. 5.

3. The question should not have been submitted to the jury because there is not a disputed fact in the case. Moreover, both sides asked peremptory instructions, and no other. 105 Ark. 25.

4. The entry of Brooks being permissive, the presumption is that it remained so, and the burden was on the appellants to show hostile possession and when it began. 10 Yerg. 476; 1 Jones on Evidence, § 58b; 22 Ark. 466; 4 Ark. 457; 1 Crawford's Dig. 755; 1 Greenleaf on Ev. (16 ed.), § § 41, 42.

SMITH, J., (after stating the facts). It is urged that the action of the court in directing the jury to return a verdict in favor of the plaintiffs is conclusive of the facts in issue in this case, and the case of *St. Louis Southwestern Ry. Co.* v. *Mulkey,* 100 Ark. 71, is cited in support of that contention. But we do not agree with them in this

contention. In the *Mulkey* case, at the conclusion of all the evidence, both the plaintiffs and the defendants united in a request to the court that a verdict be directed by the court, each of the parties asked that that direction be given in its favor, and no other instructions were asked, and it was there said:

"It is also true that the parties had the right to waive a jury and submit the matter to the court for trial in the first instance, and, each having requested the court to direct a verdict in his favor, and not having requested any other instruction, they, in effect, agreed that the question at issue should be decided by the court, and waived the right to the decision of a jury, and the court's decision and direction has the same effect as would have been given to the verdict of the jury upon the question at issue, without such direction."

(1) To authorize the court to withdraw from the consideration and determination of the jury the questions of fact involved in the litigation, it is essential that, at the conclusion of all the evidence in the case, the plaintiff and defendant should each request the court to direct the verdict, and this request must not be accompanied by any request for instructions to the jury which would require the jury to determine any controverted question of fact.

(2) These conditions were not met in the instant case, and the question of fact here involved should have been submitted to the jury for its determination. It is true that the record recites a request upon the part of the defendants for a directed verdict, but this request was made when the plaintiffs had introduced the agreed statement of facts and the deeds which constituted their paper title and made a *prima facie* showing of the right to recover the possession of the land. That request was made by the defendants alone, and was properly refused by the court, and at the time it was made amounted to no more than an exception to plaintiff's paper title and its sufficiency to make a *prima facie* case. Had a verdict then been directed by the court, it must necessarily have been directed against the defendants, instead of in their favor.

Having refused this request, the court then permitted the defendants to offer their evidence in support of their allegation of adverse possession, and this lawsuit involves that question, and its decision will turn upon the final determination of that question. And all of the evidence bearing upon this issue was offered after the court's refusal to direct a verdict at defendant's request, and the only issue of fact in the case was raised after this refusal, and thereupon the plaintiffs alone requested the court to direct a verdict in their favor, and we think the court's action in doing so was erroneous. The defendants denied that their possession was permissive, and alleged, on the contrary, that it was adverse and hostile, and we think that issue should have been submitted to the jury. The evidence is undisputed that Brooks's possession was permissive, but it, by no means, follows that that of his vendees was, necessarily, likewise permissive. Brooks conveyed the land away in June, 1899, and those claiming through him have since been in the continuous possession of the disputed strip of land, and we think they not only should have been permitted to testify as they did that their possession was as owners, but, further, that they should have been permitted to testify that they had no knowledge of any permission granted to Brooks, and that their possession was not in subordination to this permission.

(3) It is urged by appellees that the evidence in regard to the payment of taxes on the part of defendants and their predecessors in title was incompetent because no taxes were chargeable against the property of the church, and that the officers of the church could not, therefore, know, and were not charged with the duty of knowing, that these payments were being made. We think this evidence was competent, notwithstanding the fact that no taxes were chargeable against the property of the church. These tax payments were an evidence of an adverse holding, and the proof of the payments was admissible in support of that plea.

As the cause must be remanded for a new trial upon the question of fact as to whether or not the holding of the vendees of Brooks was adverse to the church and had ripened into title, we think it not improper to declare the law applicable to that issue, a clear statement of which is found in 1 Ruling Case Law, § 68, in the article on Adverse Possession and under the sub-title, "Whether Tenant May Hold Adversely," and the rule was there announced as follows:

"As a general rule, the possession of a tenant is that of his landlord, and will be so deemed until the contrary appears. This rule affects all who may succeed to the possession, immediately or remotely, through or under the tenant. Therefore, so long as the relation of landlord and tenant exists, the tenant can not acquire an adverse title as against his landlord. This is merely one application of the rule that the tenant can not deny his landlord's title. It is equally well settled that one who enters as tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim, or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known of it. · Such conduct on the part of the tenant necessarily furnishes the landlord with the legal title to enter and repossess himself of the premises. So, a third person may set up, as against the landlord, an outstanding adverse title purchased from the tenant without notice of the tenancy."

(4) The case of *Singer* v. *Naron,* 99 Ark. 446, discusses and reviews a number of cases involving the principle which will control in the decision of this case. The case just cited is authority for the statement that the church is not constructively affected with notice of the conveyances from Brooks to appellants and their predecessors in title from the mere fact that these deeds were

recorded, because they are not in the chain of the church's title; but these deeds are admissible in evidence for the purpose of showing the character of the possession. And it is true that it having been shown that Brooks entered into the permissive possession of the land, the presumption is that his subsequent possession and that of those claiming under him was in subordination to the church's title and pursuant to this permission. But this presumption may be overthrown by the evidence, and the jury should find that it was overthrown, and that the possession was adverse, if they should find the fact to be that the trustees of the church had actual notice of this adverse possession, or that defendants' occupancy had been so inconsistent with the presumption of a permissive possession as to impute knowledge to the trustees of that hostility. If the jury should find the fact to be that appellant's occupancy of the land was of such a character as to be entirely inconsistent with the idea of a permissive possession, and that it was so continued for the full statutory period, then they should find for the appellants.

For the error indicated, the judgment will be reversed and the cause remanded for a new trial.