BRITT *v*. BERRY.

Opinion delivered April 15, 1918.

1. EVIDENCE—CLAIM OF OWNERSHIP OF LAND—STATEMENTS OF DE-
CEASED.—A., the widow of one B., claimed a strip of land, which
was also claimed by C. A. and C. were adjoining owners, and A.
brought an action to restrain C. from moving the partition over,
so as to include the disputed property. *Held*, the declarations of
B., while he was in possession of the land in controversy, which
showed the intention with which he occupied the land, were ad-
missible.

2. ADVERSE POSSESSION—BEGINS TO RUN, WHEN.—Where an entry is
permissive, the statute will not begin to run against the legal
owner until an adverse holding is declared, and notice of such
change is brought to the knowledge of the owner.

3. ADVERSE POSSESSION—NOTICE OF CLAIM.—One B. was in possession
of a strip of ground between his property and that of one C. B.
made no claim of ownership in the strip. B. died and by his will
his property passed to H., his widow. After a lapse of seven years
A. claimed title to the strip of land by limitations. *Held*, that A.
failed in her claim because she had done nothing to bring to C.
any knowledge or notice of her adverse claim. It was necessary
for A. to show such notorious acts indicating a claim of owner-
ship as, under the circumstances of the case, the defendant would
be reasonably expected to take notice of.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau*, Chancellor; affirmed.

*Bratton & Bratton*, for appellant.

1. The testimony shows that appellant has had more
than seven years adverse possession of the strip and has
title thereby. 100 Ark. 556; 101 *Id*. 409; 80 *Id*. 445. The
judgment is unsupported by the testimony. 98 Ark. 461.

*Sherrill & Buchanan* and *Gardner K. Oliphint*, for
appellee.

1. Equity having properly taken jurisdiction, it
was competent to adjudicate all the issues, legal and equi-
table. 84 Ark. 145.

2. Mrs. Marguth's testimony was competent. Kir-
by's Digest, § 3093; 37 Ark. 200; 122 *Id*. 227; 77 *Id*. 309;
87 *Id*. 496; 101 *Id*. 409; 114 *Id*. 384.

3. Plaintiff's husband enjoyed only the permissive use of the strip and no notice of adverse claim was ever given. Plaintiff's title was no better than her husband's. Sedgwick & Wait, Trial to Title to Land (3 ed.), § 747, p. 596; 99 N. E. 341; 110 N. W. 327; 57 N. E. 187.

3. Where one enters into possession with the permission of the owner, the possession can never be adverse until the one in possession disclaims and brings home to the true owner notice of the disclaimer. 1 Cyc. 1032; 20 Ark. 547; 34 *Id*. 312; 43 *Id*. 504; 69 *Id*. 562; 77 *Id*. 177; 80 *Id*. 444; 84 *Id*. 140; 114 *Id*. 376; 41 Pac. 14. See also 187 S. W. 1078; 177 *Id*. 865; 43 Ark. 504, 469, 487; 42 *Id*. 118; 59 *Id*. 626; 110 *Id*. 571.

4. The burden was on plaintiff to show open, continuous, peaceable adverse possession. 97 Ark. 33; 65 *Id*. 422; 47 *Id*. 65; 87 *Id*. 496; 80 *Id*. 441, and many others.

STATEMENT OF FACTS.

This is a suit in equity by Emma Britt against Ella Berry to restrain the latter from removing a fence and building another on a strip of ground, in the city of Little Rock, alleged to belong to the former. The plaintiff, Emma Britt, owned a lot of ground in the city of Little Rock, Arkansas, and her home is situated on it. The defendant owns the lot immediately south of the plaintiff's lot and her home is situated thereon. The lot now owned by Emma Britt belonged to her husband, James Britt, in his lifetime. He died in August, 1909, and left the property to his wife under his will.

According to the testimony of Emma Britt the fence had remained where it had been placed by her husband after his death, and she had claimed and occupied all of the land within her inclosure up to the fence. She thought the fence was the line between her and the defendant and claimed up to the fence. Several other witnesses corroborated her testimony.

The defendant started to tear down the fence and build a new one, and she was forbidden to do so by the

plaintiff. She then learned for the first time that the plaintiff was claiming the strip of ground in controversy.

According to the testimony of Mrs. Marguth, the mother of Ella Berry, she was her daughter's agent in regard to the control and management of the property. A few years before the death of James Britt, the husband of Emma Britt, Mrs. Marguth had a sidewalk built in front of her daughter's property. After the walk was built she went to examine it and also looked over the whole place. James Britt had built a brick wall in front to hold the earth in this lot which extended over on her daughter's lot and had erected a barn on the rear of his lot which also extended on the lot of Ella Berry in the rear and a fence had been built from this barn to the brick wall in front which was partly upon the lot of Ella Berry. Mrs. Marguth noticed these facts and spoke to James Britt in regard thereto. Britt admitted that he knew the fence was on the lot of Ella Berry, but said that if he could be allowed to build it that way it would give him a way to get around the side of his house on the south. Britt stated that his house was right on the south line of his lot and that he wanted a little more air. Mrs. Marguth gave Britt permission to keep his fence and barn where they were and he agreed to occupy the strip of ground in question under permission from her. Ella Berry has owned the lot that the disputed strip of ground is a part of about thirty-five years and has been in possession of it, paying the taxes on it during all that time. The present suit was instituted in March, 1917, and the stone wall and barn had been erected about fifteen years.

Allen Martin testified that he had recently made a survey of the line between the two lots owned respectively by the plaintiff and the defendant; that the barn erected by Britt on the back end of his lot took in about thirteen inches of the defendant's lot; that the stone wall built in front of his lot extended about six inches over the lot owned by the defendant; that a fence running on a zigzag line extended from the stone wall to the barn in the rear;

that a part of this fence was on the land owned by the plaintiff but the most part of it was on the land owned by the defendant.

The chancellor was of the opinion from the evidence that James Britt recognized the title of the defendant to the strip of ground in controversy and that he did not intend to claim title to it by adverse possession but that he considered his use of it a permissive one; that the possession of the plaintiff was not adverse because there was no notice of such claim on her part brought home to the defendant. It was decreed that the title to the strip of land in controversy be quieted in the defendant and that the complaint of the plaintiff be dismissed for want of equity. The plaintiff has appealed.

HART, J., (after stating the facts). (1) The decree of the chancellor was correct. The declarations of James Britt to Mrs. Marguth were made while he was in possession of the land and were admissible for the purpose of showing the intention with which he was occupying the land. This was not a suit against the executor or administrator of the estate of James Britt, deceased. Hence the objection that the testimony of Mrs. Marguth was incompetent as relating to transactions with the deceased James Britt is without merit. *Williams* v. *Prioleau,* 123 Ark. 161.

(2) According to the testimony of Mrs. Marguth the entry of James Britt upon the strip of ground in controversy was permissive. At the time he spoke to her about it and acknowledged the title of the defendant he had not acquired title by adverse possession. There is nothing to show that he ever repudiated the title of the defendant. Therefore, it is clear that the statute of limitations did not run in his lifetime. The rule is that where the entry is permissive the statute will not begin to run against the legal owner until an adverse holding is declared, and notice of such change is brought to the knowledge of the owner. *Gee* v. *Hatley,* 114 Ark. 376; *Chicot Lumber Co.* v. *Dardell,* 84 Ark. 140; *Shirey* v. *Whitlow,* 80 Ark. 444;

*McCutchen* v. *McCutchen* (S. C.), 12 L. R. A. (N. S.) 1140, and case note and 1 Cyc. 1032.

(3) James Britt died on the 14th day of August, 1909, and Emma Britt took his property under his will. She commenced this suit on the 9th day of March, 1917, and claims that she has acquired title to the strip of ground in controversy by adverse possession since her husband's death. There is nothing in the record to show that she ever notified the defendant that she was holding adversely to her. It was not necessary to prove a direct written or verbal notice; but it was incumbent upon the plaintiff to prove such notorious acts indicating a claim of ownership, as under the circumstances of the case, the defendant would be reasonably expected to take notice of. There was nothing done on the premises by the plaintiff nor any circumstance introduced in evidence which would have justified the court in finding that the plaintiff had repudiated the title of the defendant and had commenced to claim the strip of ground in controversy as her own.

Therefore the decree of the chancellor was correct and will be affirmed.