McGill v. Miller.

Opinion delivered December 20, 1926.

1. EASEMENTS—ADVERSE USE OF ALLEY.—Use of an alley for 19 years by adjoining lot owners under circumstances showing that the use was made as a matter of right and not of permission *held* to establish adverse use, so as to ripen into title by limitation.

2. EASEMENTS—PERMISSIVE USE.—Permissive use cannot ripen into a legal right merely by lapse of time.

3. EASEMENTS—OBSTRUCTION OF ALLEY—RIGHT OF ACTION.—Adjacent lot owners whose only convenient means of access to their properties is through an alley have such special rights therein as entitle them to maintain a suit to prevent its obstruction.

4. EASEMENTS—OBSTRUCTION OF ALLEY—RELIEF.—A lot owner who had built a wall in an alley was properly required to remove it, however inconvenient and expensive it may be for him to do so.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*T. T. Dickinson* and *S. L. White,* for appellant.

*Carmichael & Hendricks,* for appellee.

McCULLOCH, C. J. This litigation involves a controversy between appellants McGill and Todd on the one side and appellees Miller and Autry on the other side, concerning the right to use an alley between the several properties occupied by the parties in the city of Little Rock.

Appellee Miller is the owner of lot 3, block 2, of Marshall & Wolfe's Addition to the city of Little Rock, and appellants McGill and Todd and appellee Autry are the respective owners of portions of lots 4, 5 and 6 of block 2, in Marshall & Wolfe's Addition. The addition referred to was platted and filed prior to the year 1905 by the then owners, and a man named Booher was the owner of lots 4, 5 and 6, which now comprise the property of McGill, Todd and Autry. Each of these lots are 50x150 feet, and extend east and west, fronting on Wolfe Street. Lot 6 extends full length on Ninth Street on the south, and Booher divided all three of these lots so that the residences established thereon would front on Ninth Street instead of Wolfe.

On March 10, 1906, Booher conveyed to W. S. McCain 54 feet off the west end of lots 4, 5 and 6. He had, prior to that time, conveyed to other parties the other two portions of the lots, namely 48 feet off the east end, which is now the property of Autry, and 48 feet between the two above-mentioned lots, which is now the property of Todd. Booher's deed to McCain contained a stipulation that the conveyance was made "subject to an easement or right-of-way along the north side of lot 4, which easement or right-of-way is hereby reserved for the use of the owners of the remainder of said lot 4, said easement to be ten feet wide." There was no such reservation, however, in the deeds previously executed to other parties covering the other two lots. McCain subsequently reconveyed the property to Booher, but his deed did not carry the stipulation contained in the deed from Booher to him, and Booher subsequently conveyed the property to another party without such reservation, and McGill, in the year 1910, became the owner through mesne conveyances.

Lot 3, in block 2, owned by Miller, has never been subdivided; that lot runs east and west, and Miller's residence fronts on Wolfe Street. Booher built the residence now owned by McGill, and other parties built the residences on the lots now owned, respectively, by Todd and Autry. Todd purchased his property in 1913, and Autry purchased his a few years later. There is an open space of ten feet on the south end of lot 4, along the line of the McGill property and the Todd property, and this has been used as an alley, affording an entrance to each of these properties from Wolfe Street. Todd and Autry have no other means of entering their respective properties from the north or west side. Miller also has been using the open way as an entrance to his property. His use, however, was more limited, as the driveway into his property turns north across his property line a short distance from the mouth of the alley. Several years ago Miller built a stone wall about three feet high near the south line of his property and the

north line of the alley, running from the line of the Autry property west to within a short distance of the mouth of the alley—to the point where he turns from the alley into his own property. It was developed by proof in this litigation that the stone wall built by Miller is not precisely on the line, and extends a short space over into the alley near the west end.

It appears from the testimony in this case that, when the residences were established on the properties now owned by McGill and Todd, the fences and barn were built on the line of this open way or alley so as to leave a space of ten feet along that way. The barn and the fences were destroyed many years ago, and the fences were rebuilt on the line, so as to leave an open way between the fences on the back end of the property occupied by McGill and Todd and the line of Miller's property across the alley. McGill has, within the last few years, built a garage fronting on Wolfe Street at the corner of the alley. Todd has a barn or garage on the rear end of his property, about four feet from the line of the alley. Mr. Autry's garage is situated on his property fronting the east end of the alley.

Shortly before the commencement of this action McGill attempted to place a fence across the mouth of the alley, and Todd also attempted to build a fence across his line. These fences shut up the alley completely and prevented its use by any one, and the present action was instituted in the chancery court of Pulaski County by Miller and Autry against McGill and Todd to prevent them from obstructing the alley. A temporary injunction was granted at the commencement of the action, requiring appellants to refrain from obstructing the alley during the pendency of the suit, and, on final hearing of the cause, the injunction was made perpetual. The court also in its decree required Miller to move back the west end of the wall constructed by him so that the same would be on a continuous straight line, beginning at the east end at the line of the Autry property. McGill and Todd prosecuted appeals, and Miller cross-appealed.

It is the contention of appellees that the way in controversy was left open and marked by the establishment of fences and buildings as an alley-way for the use of other owners of the property in the block and has been so used for a period of nineteen years, up to the commencement of this action, so that an easement has been acquired by limitation. *Scott* v. *Dishough,* 83 Ark. 369, 103 S. W. 1153.

It is the contention of appellant McGill that the use of the way was merely permissive and never ripened into an adverse right, and that he has the privilege of withdrawing the permission and obstructing the alley at any time it suits his convenience. He admits the attempt to close the alley, but seeks to justify it by the claim that no one ever acquired the right to use the alley so as to prevent him from closing it. It is difficult to ascertain from the abstract and brief just what Todd's justification is for closing the alley. His own testimony tends strongly to show that it was left open nineteen years before this litigation arose, for the use of the owners of other property in the, block. We are giving no force to the reservation in the deed from Booher to McCain, for the property now owned by Todd and Autry, respectively, was conveyed away by Booher long before the execution of the deed to McCain. McGill and his grantors took the title free of any reservation, and neither Todd nor Autry can base any rights upon the reservation for the simple reason that the property was not purchased by them or their predecessors in title with the right to rely upon the reservation of the alley. The case must turn entirely upon the proof concerning unrestricted use of the alley for a sufficient length of time to give the other owners the right to use the alley as an easement, and we are of the opinion that the finding of the chancellor upon that issue is sustained by the preponderance of the testimony. The testimony of both Todd and Miller shows that the way had been kept open and used for about nineteen years prior to the commencement of this suit. The line of the alley was marked by the fences

and a barn along the south line, which constituted an invitation to the public to use it as an alley. It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use so as to ripen into title by limitation. *Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705; *Scott* v. *Dishough, supra; Medlock* v. *Owen,* 105 Ark. 460, 151 S. W. 995.

It is true that the testimony of McGill establishes the fact that, after he became the owner of the property in 1910, the alley was frequently used, but that there was an embankment at the mouth of the alley, so that it was difficult to use it; and he also testified that one of his neighbors asked permission to dig down the alley and use it for the purpose of hauling manure. He stated that he agreed for his neighbor to use the alley, but his own testimony shows that the alley was open and plainly marked prior to that time, and was occasionally used. His testimony is not sufficient to show that, prior to that time, during the years that the alley had been open, the use of it had been merely permissive, nor that those who used the alley after he acquired the property did so merely by permission.

We give full recognition to the principle of law established by the numerous decisions cited in the brief of appellants, to the effect that a permissive use cannot ripen into a legal right merely by lapse of time, but we think that the evidence is sufficient to show that this use was made of the alley as a matter of right and in hostility to the right of the original owner to close the strip and prevent its use. The open way was for the especial benefit of the owners of adjoining property, and is the only convenient access that they have to their properties, and this confers upon them such special right as enables

them to maintain a suit to prevent an obstruction. We think that the chancellor was correct in holding that there was an easement for use of the alley, and that neither McGill nor Todd had the legal right to close it.

The court was also correct in requiring Miller to move his wall back so as not to obstruct the alley. He had no right to build the wall there, and it does not lie in his mouth to say that it is inconvenient and expensive for him to remove it.

We think that the decree was correct in its entirety, and it is affirmed.

HUMPHREYS, J., (dissenting). The real purpose of this suit by appellees against appellants was to enforce by injunction an alleged easement over the back or north end of appellants' lots. The alleged easement was not dedicated to the public when the lots were platted, and appellees admit that they never acquired such right by deed or other conveyance. Appellees did not claim the use of the strip of ground by virtue of a technical prescription which presupposes a grant. They base their alleged right to an easement upon seven years' adverse user of the strip of ground. The majority opinion concedes that the case must turn upon this question alone. As I read this record, the evidence is wholly insufficient to support an adverse user for the statutory period. It is conceded that the use by appellants and others originated as a permissive right and not for a consideration. I am at a loss to find anything in the evidence indicating that this permissive use was ever converted into a restricted or adverse use by appellees or any other person. The law is that a permissive use can never ripen into title by limitations. This court is committed to the doctrine that, where an entry is permissive, the statute of limitations will not begin to run against the legal owner until an adverse holding is declared by act or word. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 414; *Chicot Lumber Co.* v. *Dardell,* 84 Ark. 140, 104 S. W. 1100; *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72; *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830.

The construction by appellants of fences and garages a short distance south of their north line is not inconsistent with the permissive use to their neighbors of the strip left by them on the north side of their lots. They had a perfect right to build fences and garages on their lots at any point or place they desired. Dr. McGill testified positively that, at the time he purchased his lot, he found an embankment on the west side thereof which prevented him or any one else from entering the strip of ground claimed by appellees, and that he gave the party who occupied the lot east of him permission to take down the embankment to haul more manure in that way. He also testified that he assisted his neighbor in taking down the embankment so that he might himself come in that way. He also testified positively that he gave appellees permission to use the strip of ground as a private way as long as they could use it without any friction between themselves.

I do not understand that anybody contradicts the fact that this strip of ground was blocked off by an embankment on Wolfe Street when Dr. McGill purchased his property, or that there is any direct denial of the fact that Dr. McGill extended permission to his neighbors, including appellees, to use the back part of his lot to enter their several properties as long as it could be used peaceably by them all. This testimony is in keeping with the admission of appellees and the declaration in the majority opinion that the original user of the strip in question was permissive.

I am convinced, after a very careful reading of the record, that the decree of the chancellor should be reversed, and the cause remanded with directions to dismiss appellees' complaint.