DIAL *v.* ARMSTRONG.

4-4943

Opinion delivered February 14, 1938.

*H. M. Barney* and *Frank S. Quinn,* for appellants.

*J. D. Cook, Jr.,* for appellees.

DONHAM, J. Appellants brought suit in the chancery court of Miller county against appellees, claiming to be the owners of forty acres of land described as the northeast quarter of the northwest quarter (NE¼ NW¼) of section 9, township 20 south, range 27 west, in Miller county, Arkansas. It was alleged that Alice Wisinger Armstrong, one of the appellees, was claiming some right, title or interest in said tract; and that she had executed a mineral lease upon it to one R. E. Anderson on the 12th day of July, 1935, which mineral lease had been assigned to the McAlester Fuel Company and Dr. S. W. Boyce, appellees herein. The purpose of the suit was to cancel certain conveyances as clouds upon the title, and to have the title quieted and confirmed in appellants.

Alice Wisinger Armstrong was the second wife of I. C. Armstrong. I. C. Armstrong died July 15, 1933, leaving surviving him three children by his first marriage, nine children by his second marriage, and his said second wife, one of the appellees herein. It was shown in evidence that the said Alice Wisinger Armstrong had executed a mineral lease upon the forty-acre tract involved in this suit to one R. E. Anderson on the 12th day of July, 1935, which mineral lease had been assigned to appellees, McAlester Fuel Company and Dr. S. W. Boyce.

Appellants claim title to said forty-acre tract as heirs of A. C. Dial, deceased, his death having occurred in the year 1932. On October 22, 1897, the said A. C. Dial, father of appellants, acquired title to 320 acres of land in said above-mentioned section 9, having purchased same from E. A. Armstrong by deed of that date. He paid therefor the sum of $600. On August 29, 1900, the

said A. C. Dial and wife conveyed the south half of the northeast quarter (S½ NE¼) and the southeast quarter of the northwest quarter (SE¼ NW¼) and the northeast quarter of the southeast quarter (NE¼ SE¼) and the north half of the southwest quarter (N½ SW¼) of said section 9, being 240 acres in all, to his brother-in-law, the said I. C. Armstrong. This left the said A. C. Dial then owning the northwest quarter of the southeast quarter (NW¼ SE¼) and the northeast quarter of the northwest quarter (NE¼ NW¼) of said section 9.

Later, on the 20th day of October, 1908, the said A. C. Dial and wife executed another deed to the said I. C. Armstrong and conveyed to him the northwest quarter of the southeast quarter (NW¼ SE¼) of said section 9, one of the forty-acre tracts remaining, having by the two conveyances vested title in the said I. C. Armstrong to all of the land in section 9 owned by him, except the northeast quarter of the northwest quarter (NE¼ NW¼), which is the tract involved in this suit. This forty is known and referred to by the witnesses as the north forty.

According to the testimony introduced on behalf of appellants at the trial in the court below, when the said I. C. Armstrong bought the northwest quarter of the southeast quarter (NW¼ SE¼) of section 9 from Dial in October, 1908, Dial tried to get him to buy the remaining forty acres, being the forty involved in this suit, same being the northeast quarter of the northwest quarter (NE¼ NW¼) of said section; but Armstrong declined to buy said last-mentioned forty because he said he had no use for it, and did not have the money to pay for it, and that he wanted to buy only the south forty. At the time Armstrong purchased the above-mentioned forty, while saying that he did not want to buy the north forty, he agreed that he would look after it and pay the taxes on it for its use. Nothing more was ever done by Dial about the north forty, so far as giving Armstrong any claim upon same is concerned. Dial never at any time executed a deed of conveyance to anyone for it. So far

as the record in this case reveals, he never at any time acknowledged an outstanding title in anyone.

I. C. Armstrong held possession of the forty-acre tract involved in this suit from the time he agreed to look after it and pay the taxes on it in 1908 to the date of his death, July 15, 1933. In fact, he had been in possession of same and had been paying the taxes for some seven or eight years prior to the time he bought the south forty, deed to which was executed and delivered to him October 20, 1908. In fact, he had been paying the taxes on both the north and the south forty, and had been looking after both forties, but was evidently doing so for his brother-in-law, the said A. C. Dial. The south forty had forfeited for taxes; and Armstrong had bought same at tax sale. However, he asserted no title under the tax deed, and his purchase of same from Dial in October, 1908, was an acknowledgment of Dial's title.

The wife of I. C. Armstrong, being one of the appellees herein, claims an undivided one-fourth interest in the forty-acre tract involved in this suit by reason of a conveyance by deed from the children of the said I. C. Armstrong by his first wife. She, furthermore, claims a dower interest in said forty-acre tract, and further claims that title to all the remaining part of said forty is in her children, same being the children of herself and the said I. C. Armstrong, and being nine in number. She has continued in possession since the death of the said I. C. Armstrong, renting same to tenants. She does not show or claim any color of title from A. C. Dial or his privies in estate, and claims no color of title at all, except the deed which was executed by the children of the said I. C. Armstrong by his first wife, this deed, of course, having been executed after the death of the said I. C. Armstrong. As stated, same was executed in the year 1935. The execution and delivery of this deed took place less than two years before the filing of the suit herein.

Appellants contend that the possession of the said I. C. Armstrong and his surviving widow and children, was and is permissive and not adverse. On the other

hand, appellees claim that said possession was adverse and had ripened into title.

E. A. Armstrong, who deeded the 320 acres to the said A. C. Dial, was Dial's father-in-law, and the father of the said I. C. Armstrong. Between these brothers-in-law there existed close, confidential and cordial, if not affectionate, relations, which continued until the death of Dial in 1932. The testimony shows that they were engaged together in farming; and, as heretofore stated, I. C. Armstrong looked after the payment of the taxes on Dial's land in Miller county; that Dial sold Armstrong lands on two different occasions; and that after Dial left and went to Oklahoma, he visited Armstrong in Miller county. One of the witnesses testified: "They always had a heap of dealings with each other."

This cause was heard by the Miller chancery court on the 8th day of July, 1937, and decree rendered in favor of appellees, quieting and confirming their title in the forty-acre tract involved in this suit. Appeal was duly perfected by appellants to this court.

The main question involved in this appeal is whether the possession of the said I. C. Armstrong of the forty-acre tract, spoken of in the evidence as the north forty, and being the one involved in the litigation resulting in the appeal herein, was permissive or adverse. If the possession by the said I. C. Armstrong from the fall of 1908 to the date of his death August 15, 1933, was permissive, then such possession did not ripen into title; and the decree of the court confirming and quieting the title in appellees was error. On the other hand, if the possession of the said I. C. Armstrong for the above period or for any period for seven years or more was adverse, that is, if for a period of seven years, the said I. C. Armstrong held said forty-acre tract in actual, open, continuous, hostile and exclusive possession, accompanied with the intent to hold adversely to the true owner, then the decree of the court confirming and quieting the title in appellees is correct.

Was the possession of the said I. C. Armstrong permissive? His possession and payment of taxes prior to

1908 was not adverse to Dial, the record owner. The record title was in Dial, the chain of title being complete from the government down to him. In 1908 the said I. C. Armstrong recognized the title of the said A. C. Dial in the north forty, as well as in the south forty. At that time he purchased from Dial the south forty and negotiated with him as to the purchase of the north forty, saying that he was unable to buy it, but that he would look after it for Dial and pay the taxes for the use of it. That he recognized the title of Dial in said two forty-acre tracts in October, 1908, we think, is conclusively established by the evidence of Walter Dial and Sam Stevens, and by the further fact that Armstrong purchased the south forty, taking a deed of conveyance therefor from the said A. C. Dial and wife. Walter Dial testified:

"In the year 1908 my father and I were farming across the river about three miles. I. C. Armstrong was over there with us. He rented twenty acres in 1907 and 1908. While I was there in 1908 my father and I. C. Armstrong made a deal for the northwest quarter of the southeast quarter (NW¼ SE¼). I was present at the time and heard the deal between the parties and the terms. One day after work hours there was a general conversation and my daddy says, 'Coley, let me sell you that eighty acres in Arkansas' (Coley being the name by which I. C. Armstrong was known), and Uncle Coley said that he did not care to buy the north forty because it overflowed, said he didn't care for that forty, but that he would buy the south forty to even up his farm, the northwest quarter of the southeast quarter (NW¼ SE¼). My father said he would take one hundred dollars for the south forty, but he would like to sell all of it, but Uncle Coley said he did not want to buy all of it, but would pay the taxes on that forty for the use of it, until he could dispose of it. He said he would pay the taxes on it for the use of it, that there was some timber that he might use for posts. He had been paying the taxes on that which he bought for the use of it, and said he would pay the taxes on the north forty for the use of it. That

was in the fall of 1908. I was about fifteen years old then, and was working on the place with these men. We were gathering corn. The lands we were working were in Bossier parish, Louisiana. On these lands at the time were Sam Stevens, I. C. Armstrong, my father and myself. Sam Stevens was working for my father. We were all 'batching,' and the deal was made there.

"I do not recall when the deed was made to the forty. Some week or ten days. He bought the northwest quarter of the southeast quarter (NW¼ SE¼); and the northeast quarter of the northwest quarter (NE¼ NW¼) he was to have the use of for the payment of the taxes."

Sam Stevens testified:

"I knew I. C. Armstrong and also knew A. C. Dial. In the year 1908, I was living with them. I worked with A. C. Dial eight or ten years. A. C. Dial is the father of Walter Dial. Have known the family since they were kids. I was working with A. C. Dial in 1908, on the river, making a crop. Coley Armstrong (I. C. Armstrong) was down there, made a corn crop on the river across on the other side of the river in Louisiana on Red River. Walter Dial was there with us. Walter and Frank. We were over there 'batching,' had been 'batching' for two or three years, and that year were raising corn. I remember a transaction between Mr. Dial and I. C. Armstrong about that time. They were talking something about land, but I did not know just at that time, whether it was in Arkansas or Louisiana, but they were talking about trading. Mr. Dial wanted to sell him eighty acres but Coley said, 'I am not able to buy it.' Mr. Dial told him it did not make any difference about money, that he would sell on credit. They talked on, and he didn't want the whole eighty, he just told him he might buy forty of it. Said he didn't have any money to pay down on it, but said, 'I can let you have some cattle.' And he said, 'I just as soon have cattle as anything, I am buying cattle.' I don't know whether they made the trade that night or not, but I do know that in a day or two they went and made a deed and fixed up the

papers to this land. Mr. Dial wanted to sell eighty acres, but Mr. Armstrong didn't want the north forty, he wanted the south forty. I don't know what arrangement was made about the north forty. Coley said he didn't want the whole eighty. He would like to have the south forty. He said something about looking after the forty. Said if he bought this forty he would see after the other forty, and see that nobody got any timber off of it. Don't know what he meant by 'seeing after it,' except just to see after it. To see that nobody got the timber."

There is nothing in the record to indicate that these two witnesses, in the matter of the above-quoted statements, were telling anything but the absolute truth. We believe this evidence is sufficient to show that the possession of I. C. Armstrong in its incipiency was permissive. It is certain that whatever possession he exercised over the forty-acre tract involved herein prior to 1908 was permissive.

The appellees offered no testimony showing the initiation of possession of the said I. C. Armstrong, and there is little contention, if any, that the possession of the said Armstrong did not originate in the manner testified to by Walter Dial and Sam Stevens. The testimony of Walter Dial and Sam Stevens, bearing as it does upon the immediate and vital point of the origin of possession, and being the only testimony as to that origin, and sustaining the permissive character of Armstrong's possession as it does, is competent and relevant, and is of the greatest materiality.

The decisions of this court definitely settle the rule that permissive possession is not such possession as will start the running of the statute of limitations. When possession, in its incipiency, is shown to be permissive, there is a presumption of law that the subsequent possession of the same party is also permissive.

In the case of *Gee* v. *Hatley*, 114 Ark. 376, 170 S. W. 72, this court said: "And it is true that it having been shown that Brooks entered into the permissive possession of the land, the presumption is that his subsequent possession and that of those claiming under him was in

subordination to the church's title and pursuant to this permission."

Of course, the presumption may be overthrown by evidence to the effect that the continued possession was not permissive but actually adverse. However, in the case before the court, we believe the record shows that the continued possession of the said I. C. Armstrong from 1908 until his death July 15, 1933, was entirely consistent with the idea of permissive possession.

In the case of *Vittitow* v. *Burnett,* 112 Ark. 277, 165 S. W. 625, this court held that where a party admits title to land to be in another, his possession thereof is not hostile to the true owner, so as to give him title by adverse possession.

In the case of *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830, this court said: "According to the testimony of Mrs. Marguth the entry of James Britt upon the strip of ground in controversy was permissive. At the time he spoke to her about it and acknowledged the title of the defendant he had not acquired title by adverse possession. There is nothing to show that he ever repudiated the title of the defendant. Therefore, it is clear that the statute of limitations did not run in his lifetime. The rule is that where the entry is permissive the statute will not begin to run against the legal owner until an adverse holding is declared, and notice of such change is brought to the knowledge of the owner." Citing *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72; *Chicot Lumber Co.* v. *Dardell,* 84 Ark. 140, 104 S. W. 1100; *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *McCutchen* v. *McCutchen,* 77 S. C. 129, 57 S. E. 678, 12 L. R. A. (N. S.) 1140.

In the case of *Fry* v. *Grismore-Hyman Co.,* 151 Ark. 44, 235 S. W. 373, the appellee claimed title solely by adverse possession. It was found that twelve or fifteen years before the commencement of the suit involved in the case she cleared and fenced the lands involved and continued in possession up to the commencement of the suit. Holding that the possession of appellant was permissive and not adverse, the court said: "If appellant occupied the land pursuant to an agreement made be-

tween her son and the agent of the owner, then such occupancy was permissive and could not ripen into title by lapse of time, unless notice was in some way brought home to the owner that the occupancy had changed from a permissive one into a hostile one."

In the case of *Fulcher* v. *Dierks Lumber & Coal Co.,* 164 Ark. 261, 261 S. W. 645, the court said: "To make such a holding adverse, it was incumbent upon the appellant to prove, not merely that he was occupying and cultivating the land, but that he was holding the same adversely to the rights of the appellee. The burden was upon the appellant to prove not only that his possession was actual, but that it was open, hostile and exclusive." Citing, *Nicklace* v. *Dickerson,* 65 Ark. 422, 46 S. W. 945; *Newman* v. *Peay,* 117 Ark. 579, 176 S. W. 143; *Jones* v. *Temple,* 126 Ark. 86, 189 S. W. 847.

In that case, the court further said: "There is nothing in the testimony to show that the holding by George of this tract was adverse to the appellee, nothing to show that such holding was not originally permissive. . . . If the holding began by the permission of the appellee, it would not ripen into an adverse or hostile right until notice of such adverse holding was brought home to the appellee and the holding had been continued thereafter for the statutory period."

In *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489, this being the most recent of this court's decisions on the subject of adverse possession, the court said: "In order that adverse possession may ripen into ownership, possession for seven years must have been actual, open, notorious, hostile, exclusive, and it must be accompanied with an intent to hold against the true owner."

In this case, the court further said: "Where the original entry on another's land was amicable or permissive, possession, regardless of its duration, presumptively continues as it began, in the absence of an explicit disclaimer."

The record shows that after the agreement of Armstrong to take possession of the forty acres involved herein and to pay the taxes thereon and to look after it

for the use of it, he cleared about half the tract and fenced the entire tract. However, these acts on the part of Armstrong were not inconsistent with the idea of permissive possession. He had refused to purchase the tract, but had agreed that for its use he would look after it and pay the taxes. These acts of cultivation and fencing the tract continued for a period long enough to ripen into title, if they had been adverse to the true owner. But they were not adverse to the true owner. They were in keeping with the understanding between Dial, the true owner, and the said Armstrong.

We are of the opinion that the possession of the said I. C. Armstrong throughout its duration from 1908 to his death July 15, 1933, was permissive and not adverse. If it be granted that the possession of his surviving widow and children was adverse from the time of Armstrong's death, it did not continue for such duration as to ripen into title. However, their possession was only a continuation of the possession of the said Armstrong and, in our view, was not adverse to the true owner. They gave the heirs of A. C. Dial, appellants herein, no notice that they were claiming adversely; and, therefore, their possession must be considered as of the same character as that of the deceased Armstrong.

It is contended by appellees that the lease executed by appellee, Alice Wisinger Armstrong, to one R. E. Anderson, and assigned by him to the McAlester Fuel Company and Dr. S. W. Boyce, appellees herein, is a valid lease because said lessee and his assignees must be considered innocent purchasers. We do not adopt this view. Said appellees took no greater title than was held by their grantor. The said Alice Wisinger Armstrong had no title; and, therefore, the said McAlester Fuel Company and Dr. S. W. Boyce took no title by reason of the lease executed by her to the said Anderson, and assigned by him to said company and Boyce. This court has held many times that whatever puts a party on inquiry amounts to notice where the inquiry becomes a duty and would lead to knowledge of the requisite fact by the exercise of ordinary diligence and understanding. *Waller*

v. *Dansby,* 145 Ark. 306, 224 S. W. 615. This rule has been upheld by this court in many decisions, both before and subsequent to the above decision. Anderson, McAlester Fuel Company and Boyce, were charged with notice that the record title was complete from the government to A. C. Dial, father of appellants. The records of deeds showing complete title in the said A. C. Dial were constructive notice to them. If they had made inquiry of Alice Wisinger Armstrong, the grantor in said lease, they would have been advised as to the address of appellants. By inquiry of the appellants, they would have ascertained that appellants claimed the title as descendants of their father, in whom the record title was complete. Therefore, we hold that appellees, McAlester Fuel Company and S. W. Boyce, were not innocent purchasers or assignees of the lease which had been executed and delivered to the said R. E. Anderson.

The decree of the court is reversed and cause remanded with directions to cancel all conveyances of Alice Wisinger Armstrong, and of heirs of the deceased, I. C. Armstrong, and persons claiming under them, as clouds upon the title of appellants, and to confirm and quiet the title to the forty-acre tract involved in this appeal in appellants.