TOLL, ADM'X *v.* JACKSON.

5-3500                                                387 S. W. 2d 605

Opinion delivered March 8, 1965.

*David Solomon,* for appellant.

*Dinning & Dinning,* for appellee.

GEORGE ROSE SMITH, J. In 1960 litigation was concluded by which the appellants, as the personal representatives of the estate of Richard F. Toll, obtained a judgment against Phillips Cooperative Gin Company for Toll's wrongful death. *Phillips Cooperative Gin Co.* v. *Toll,* 232 Ark. 236, 335 S. W. 2d 303. A writ of execution was issued under the judgment. At the execution sale the appellants bought in the 1.6-acre tract to which the gin company had record title.

It was then discovered that the gin company had been occupying and using a slightly larger tract of land than that described in its deed. The appellants brought this suit to quiet their title to the larger tract, asserting that the gin company had acquired title to the excess by adverse possession. This appeal is from a decree dismiss-

ing the complaint for want of equity and confirming the record title of the appellees, C. J. and Ella Jackson.

The key question is whether the gin company's possession of the overage now in dispute was adverse or permissive. Upon this issue we do not find the decree to be against the weight of the evidence.

There is actually not a great deal of conflict in the testimony. The appellee C. J. Jackson formerly owned a cotton gin that burned down. In 1948 he took the lead in organizing the Phillips cooperative gin. Out of a 5-acre tract that Jackson owned he sold the co-op the 1.6-acre gin site, for $400 cash. There is testimony that the co-op intended to buy two acres, but if so there is neither any indication of what the boundaries of the larger tract would have been nor any contention that the gin company ever had an enforceable claim to more land than it received.

Jackson served as president of the co-op from its organization in 1948 until it went out of business in 1959. C. H. Martin, who died before the trial, managed the company's business. The main gin building was constructed upon the land described in the co-op's deed from Jackson. During the years of its active life the co-op expanded its possession beyond the limits of its record ownership. Its encroachments, which are not all shown to have existed for more than seven years, included the construction of a concrete loading dock next to the gin itself, the erection of a pump house that was jointly used by Jackson and the gin company, the construction of a building for burning hulls at a safe distance from the gin, and the use of somewhat vaguely defined areas as roadways for the convenience of the co-op's patrons.

We think the appellants failed to sustain their burden of proving adverse possession. Their principal witnesses were men who had helped organize the co-op and had served on its board of directors. They testified—and the appellees concede that the gin company physically occupied the property we have mentioned. But these witnesses were not actively managing the business from day to day. They had no particular reason to know the

circumstances that attended the co-op's use of land that it did not own. Their testimony fails to establish the essential element of *hostile* possession.

Jackson's statements that he allowed the cooperative to use his property in furtherance of its business are, in our judgment, reasonable and worthy of belief. Certainly the president of the concern did not intend to exercise hostile dominion over his own land. There is not much proof to indicate that Martin, the manager, had such an attitude either. We think it a fair conclusion that the co-op's possession was merely permissive and thus not of such a nature as to ripen into title by adverse possession. *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830; *Fry* v. *Grismore-Hyman Co.,* 151 Ark. 44, 235 S. W. 373. While it is true, as the appellants point out, that Jackson owed a fiduciary duty to the co-op, we do not perceive that this duty was violated by his simply allowing the company to occupy part of his property in the course of its business. Upon the whole record we conclude that the chancellor reached the right decision.

Affirmed.