4-6212 147 S. W. 2d 997

Opinion delivered February 24, 1941.

*Lamar Williamson, Adrian Williamson* and *Gaston Williamson,* for appellant.

*Danaher & Danaher,* for appellee.

MEHAFFY, J. The appellant, city of Dumas, filed its complaint in the Desha chancery court against the appellee, G. C. Edington, asking that the appellee, his agents, servants and employes be permanently restrained from obstructing the street or sidewalk, and it thereafter filed an amendment praying that in addition to restraining appellee from obstructing the sidewalk, he be required by mandatory injunction to abate the nuisance, and asked also that the deeds to this property held

PLAT.

by appellee be reformed so as to make them subject to the public servitude and easement owned by the city of Dumas, and that the city's title in and to said sidewalk be by the court established, quieted and confirmed.

The appellee filed answer denying the material allegations in the complaint and denied that appellant had established any right or claim of right of easement over and across said strip by long and continuous user under a claim of right or otherwise; alleges that the appellee and his predecessors in title have owned the property since 1851. An amendment was filed to the answer alleging that appellant was estopped from seeking an injunction, and that it was guilty of laches which bars it from seeking the aid of the court.

The complaint alleged that the city of Dumas was created a body corporate in 1904 and made a city of the second class in 1938, and that during all that time it had used the strip of land involved as a sidewalk since a time prior to 1904; that the building now standing on the said lot was constructed in 1913 abutting the five-foot strip then and now used as a walkway, and that the walk has been used continuously by the public for two score years; that the user was open, notorious and adverse to any claim of ownership in the appellee or any of his predecessors in title.

There was introduced in evidence a plat which shows the situation and location of the five-foot strip involved in this controversy. The plat is shown on the preceding page.

The strip of land involved is a five-foot strip off the east side of the G. C. Edington lot located in the northeast corner of lot 1, block 1, Waterman's Addition to Dumas; the sidewalk is indicated by a red line; the Missouri Pacific Railroad track is shown in a black line; the Missouri Pacific right-of-way extends west from the railroad tracks to the property involved; the railroad right-of-way is used as a street. Photographs were also introduced in evidence.

G. C. Edington, the appellee, was called as a witness for the appellant, and testified in substance that on

June 12, 1919, Mrs. Alfie Willeford conveyed to J. B. Brown and G. C. Edington the east part of lot 1, block 1, Waterman's Addition to Dumas, and testified to a particular description of the property conveyed; later witness acquired Brown's half interest by will, on the death of Brown in 1924, and that since that time he has been the sole owner; his first interest in the property being acquired June 12, 1919; the brick store was built in 1913 by Dr. T. H. Bowles and was on the property when witness bought it; it is five feet from the northeast corner of the store to the railroad right-of-way and wider on the southeast corner, due to the fact that the railroad runs at an angle away from the building; the west line of the right-of-way is identical with the east line of the property described in the deed from Mrs. Willeford; Mrs. Willeford bought this property from Dr. Bowles.

T. B. Meador testified in substance that he was born in Dumas and has lived there all his life—43 years; is in the drug business in the store building next to the Edington building; remembers when Dr. Bowles, in 1913, built the brick store, replacing a frame store building; as far back as witness can remember Dr. Bowles had a drug store there in a wooden building which was back 15 or 20 feet from the sidewalk on the east side; witness started working for Dr. Bowles in 1904 or 1906, about 35 years ago; the original store building was built on this property longer ago than witness can remember; the east line of this property is identical with the west line of the right-of-way; as long as witness can remember the public of the city of Dumas has used the east side of this property for a sidewalk; it was originally a board walk, and all traffic passing there went down that sidewalk; the board walk was inside of the property line where the sidewalk is now; the 20 feet of concrete sidewalk which Mr. Edington built near the front of his store, from the northeast corner running south, is where the old board walk was, except that it extended about 100 feet further south; Dr. Bowles built that sidewalk for his own convenience and the public used it as long as it was there; before Dr. Bowles built the board walk, the area over which he built it was used by the public as a

sidewalk, especially by the people who lived on the lots south; the public has also constantly and continually used the area between the sidewalk and the right-of-way as a street, as long as witness can remember; if another sidewalk was taken by the city between the Edington property line and the railroad, there would not be left enough street to accommodate the traffic; the principal business district of Dumas is located on the opposite side of the railroad northeast from Edington's store; Waterman Avenue crosses the railroad in front of Edington's store and leads to that business district; there are about three blocks of business district north of Edington's store west of the tracks; some of the houses witness referred to were facing east on the railroad right-of-way, and from these houses there was no other way of coming to the business district of Dumas; this street and sidewalk are used in going to and from Union Church; there was no other connection between Waterman Avenue and Bowles Avenue; as long as witness can remember, the city of Dumas was not in the habit of keeping up any of its sidewalks, but it kept this one up as well as any of the others; witness and others have used this sidewalk every day, and Mr. Edington has never objected; the people who live down that street have no other ingress or egress to or from the fronts of their property on the east; Mr. Edington has at times used part of this sidewalk, and sometimes a part of the street to display farming implements; during those periods the public would walk around the plows and sometimes would have to go out into the street to get to that part of town; he used about 20 or 25 feet of sidewalk for this display, but the public continued to use the rest of the sidewalk uninterruptedly and without interference; Mr. Edington built 20 feet of concrete sidewalk from the front of his store on the east side, about five feet wide, which is the area he used to display his implements; as soon as these implements were sold the public immediately resumed the use of the sidewalk along the side of the brick building; never heard of Mr. Edington objecting to the public using the sidewalk along the side of his store.

Senator I. N. Moore testified in substance that he had lived in Dumas since 1907, and has been familiar with the Edington store property for 32 years; the strip of land adjacent to the Edington store building has been used by the public as a sidewalk or public passageway since witness came to Dumas; as far back as witness can recall, the public has continued to use that sidewalk or passageway; the people who live on the lots south of the Edington property have no other way of ingress or egress to their property from the east or front, or any way of getting to the business district of Dumas without going along that sidewalk or using the railroad right-of-way in front of their property; there is no platted street in front of those lots; without the use of this strip of land by the public there would be no connection between Waterman Avenue and Bowles Avenue; they would have to cross both of the railroad tracks and also the entire right-of-way of the railroad unless this strip of land is used as a passageway; the witness personally knows that the public has used this strip of land for a passageway both as a sidewalk and street for the past 32 years; witness has noticed that, since Mr. Edington has had his store, he displays implements intermittently from time to time on the sidewalk; sometimes the public used the pathway between the implements and the store, and other times when the implements were put next to the store, the public would go on the outside of the implements.

Mayor J. R. Moss testified that he had lived in Dumas 23 years, and his testimony as to the use of the sidewalk by the public was substantially the same as that of T. B. Meador and Senator Moore. He testified also that the city of Dumas was laying a concrete sidewalk along the entire east side of block 1 within the property lines as a WPA project; all of the sidewalk had actually been constructed except along Mr. Edington's property, the strip of land involved in this litigation; this area had been used by the public for years and years as a sidewalk; Mr. Edington objected to the laying of the sidewalk, and gave notice that he claimed the property, and

the WPA would not lay sidewalks where there was a controversy over it; that led to the bringing of this action; as far as witness could learn, this sidewalk has been continuously used by the public so long that the memory of nobody now living in Dumas runs to the contrary; Mr. Edington has used a portion of this sidewalk for the display of his merchandise from time to time; prior to a recent order given by the council to remove it, it has been customary for other merchants to also display some of their merchandise on the sidewalks; about a year ago the council had to act against this custom and order the removal of such display merchandise.

City Marshal R. K. Moss, Mrs. Ray Meador, W. B. Meador, B. C. Bowles, and Zack Collins all testified to substantially the same facts concerning the use of the sidewalk by the public.

B. M. Peacock, T. W. Eastham, and G. C. Edington testified for the appellee, but there was no dispute or denial by any of the witnesses as to the use of this strip of land by the public.

By agreement, there was a letter introduced which had been written by Edington and Brown, in which they stated that they wished to make it known that they claimed this strip of land and asked that it be made a matter of record. There is, however, no record, but the letter was pasted to a page of the minutes.

The chancellor entered a decree finding all the issues of fact and law for the appellee. This case is here on appeal.

Excellent briefs, citing many authorities, have been filed by counsel on both sides. We find it unnecessary to discuss many of the authorities, however, as we have concluded that the preponderance of the evidence shows a right by prescription. We think a preponderance of the evidence shows that the appellant had an easement and right to use the sidewalk. It is true that the mere using a way over unenclosed land does not, of itself, create a right to continue to do so; but in a city or town where the proof shows conclusively that there is no other

way for the public to travel except over this particular strip of land, which they have used for many years, it is a very different situation from going over unenclosed lands in the country. It is true that even if it was a right by necessity, the landowner would be entitled to receive pay if he demanded it, but here we are calling attention to the necessity as a circumstance or evidence tending to show that there was a right by prescription. The evidence shows that this particular sidewalk had been worked as much as any other sidewalk in the city of Dumas. The city had the right to supervise and control the streets and sidewalks and had authority to cause to be removed any obstruction thereon.

This court said, in the case of *State, ex rel. Latta,* v. *Marianna,* 183 Ark. 927, 39 S. W. 2d 301: "The city council indubitably has the power to supervise and control the streets and sidewalks of the city, with authority to cause to be removed any structure which encroaches upon the same, nor is this power lost because of inaction of the city governing body for a long period of time."

It was also held in that case that municipalities are given power to regulate the construction and use of the streets and sidewalks within their limits.

"The third method by which easements may be created is by prescription, or, more properly speaking, under the modern doctrine, by presumption. Originally, in England, easements, as incorporeal hereditaments, were said to lie wholly in grant; and statutes of limitation were held to apply only to actions for the recovery of land. In the course of time the fiction of a 'lost grant' was adopted by the courts; that is, the court presumed, from the long possession and exercise of right by the defendant with the acquiescence of the owner, that there must have been originally a grant by the owner to the claimant which had become lost. It was called a lost grant, not so much to indicate the existence of the grant originally, as to avoid the rule of pleading requiring profert." 9 R. C. L. 771.

This court said in the case of *McLain* v. *Keel,* 135 Ark. 496, 205 S. W. 894: "The right which the public

acquires in a public highway, whether by order of the county court or whether by open, continuous and adverse user without such order, for a period of more than seven years is only an easement. The original owner or his privies in title still retain the fee, together with all rights not inconsistent with the public use."

Several witnesses testified that the public use of this strip of land as a sidewalk was open, uninterrupted and continuous for many years, and there is no evidence that any objection was ever made to this public use of the sidewalk, nor was there ever any interruption of this use. The undisputed proof shows that the public used this strip of land as a sidewalk openly, peaceably, notoriously, continuously and uninterruptedly.

"Except where it is otherwise provided by statute, or in cases where it is shown that the user was permissive in its inception, or, as it has been held in some jurisdictions, where the prescriptive title is claimed against one not a party to the suit, proof of an uninterrupted use for the prescriptive period, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right." 19 R. C. L. 959.

"The prevailing rule is that where the claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, so as to place upon the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, the burden of rebutting this presumption by showing that the use was permissive." 9 R. C. L. 781.

In the case of *McGill* v. *Miller*, 172 Ark. 390, 288 S. W. 932, this court said: "It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under

which the alley was opened were sufficient to establish an adverse use so as to ripen into title by limitation. . . . We give full recognition to the principles of law established by the numerous decisions cited in the brief of appellants, to the effect that a permissive use cannot ripen into a legal right merely by lapse of time, but we think that the evidence is sufficient to show that this use was made of the alley as a matter of right and in hostility to the right of the original owner to close the strip and prevent its use."

"It is not necessary that there be an express claim of right in words, or that the adverse party should expressly admit his knowledge thereof, for those facts will be inferred from the nature of the use and situation of the parties." 19 C. J. 887.

In this case, in addition to the testimony of witnesses that this strip of land has been used by the public for many years without objection, there are circumstances in evidence corroborating this evidence. When Dr. Bowles owned the place, he built a board walk for the use of the public and it was used by the public for years. When he built his brick store, he set it back five feet from the property line, leaving this strip which had been used as a sidewalk. The plat introduced shows that this is the only way for the public to travel in that part of the city without getting out into the street, and it will be noted from the plat that the sidewalk built by the city extends to the five-foot strip involved, which had been used many years by the public.

"The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions." *Myers* v. *Hobbs*, 195 Ark. 1026, 115 S. W. 2d 880; *Hanna* v. *Magee,* 189 Ark. 330, 72 S. W. 2d 237; *Pekin Wood Prod-*

*ucts Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798; 23 C. J. 48.

It, therefore, appears clearly from the evidence, if not by the words of the owners of the property, by their conduct, that the continued use of this strip of land as a sidewalk by the public was acquiesced in by the property owners. When Dr. Bowles owned the property, he built a board walk and placed his new building back five feet from the property line. These things we think sufficient to show that there was a right to the sidewalk by prescription.

The decree is, therefore, reversed, and the cause is remanded with directions to enter a decree as prayed for in appellant's complaint.