KIRBY *v.* CITY OF HARRISON.

4-6253                          148 S. W. 2d 666

Opinion delivered March 17, 1941.

*V. D. Willis* and *John H. Shouse,* for appellants.

*R. E. Rush* and *W. S. Walker,* for appellees.

HOLT, J.   The city of Harrison, Arkansas, along with appellees, Tennie E. Moss, Fon Wagner, and Laura Lynn, who intervened as interested property owners, filed injunction proceedings in the Boone chancery court to prevent appellants, Joe W. Kirby and O. B. McCoy, from closing an alley-way approximately twenty-five feet wide and 150 feet in length, running west from North

Vine street on the east to an intersection with a north and south alley on the west.

Appellee interveners, together with appellants, own all the lots adjacent to said alley-way on the south except one twenty-five foot lot on the west end of said alley.

This suit was begun when appellants attempted to block the space at the rear of their building, 20 x 50 feet, by the erection of a building thereon. Appellees alleged in their petition for injunctive relief that the city of Harrison, interveners, and the public in general, had acquired an easement by prescription over this property.

Appellants denied every material allegation in appellees' petition and intervention and (quoting from appellants' brief): "They state that the owners of the respective lots or subdivisions have claimed to own the same the full length, paid taxes on the same and fully recognized the rights of the other owners to their respective lots, and that this vacant space has been used by common agreement or acquiescence," and was permissive only.

Appellants also filed a motion to have their grantors made parties to the suit, insisting that they were necessary parties because of their warranty in their deed of conveyance to appellants. This motion was overruled by the court.

Upon a trial the court found that the public and adjacent owners to appellants' property had acquired an easement over appellants' property in question, and entered an order restraining appellants from closing the alley. This appeal followed.

On the record before us it appears that lots nine and eleven, block four, of the original town of Harrison, face North Vine street. These lots have been divided into six subdivisions, each being twenty-five feet wide and 120 feet long, and the buildings on these subdivisions face Rush Avenue, which is a street forming the north side of the public square. Appellants own subdivisions one and two of lots nine and eleven in block four. Appellants' brick building, which is 100 feet long and fifty

feet wide, covers these two subdivisions except the space 20 x 50 feet in the rear, which is the property involved here.

This alley-way, which is now open at both ends, as has been indicated, is approximately 150 feet in length and for the first fifty feet beginning with its east end is twenty feet wide.

Much testimony was taken, twenty-seven witnesses testifying in the case, twenty on behalf of appellees and seven on behalf of appellants. The testimony of appellees is to the effect that the property in question has been used by the public generally and adjoining property owners for more than thirty years, for egress and ingress, for serving these buildings from the rear, and for loading and unloading. It is undisputed that there are water mains and sewer pipes within this vacant space.

As illustrative of appellees' testimony, witness John Ed Watkins testified that he is eighty-six years of age, and has lived in and around Harrison during the fullness of that term. He would not attempt to say how long that alley has been used as a passageway, but he has driven teams through there as far back as thirty-five years ago. The alley is substantially in the same condition now as it was as long ago as he could remember. He drove through there when thoroughfares were crowded, and on cross-examination: ''You don't know whether that use was against the wishes of the property owners or not? A. No, I don't have any way of knowing that. I never heard any complaint about it.''

W. H. Watkins, eighty-four years of age, testified (quoting from appellants' brief): ''The people who own the buildings in front have people drive back in the alley and throw off their wood and stuff like that. That alley has been there thirty years anyway.''

Joe Kirby, one of the appellants, testified that he used this alley space for making deliveries while employed by a grocery company and that it has been open as long as he can remember.

The evidence, as a whole, is practically undisputed as to the long continued use for a period of more than

seven years of the property in question. The contention of appellants is, however, (quoting from their brief): "Admitting the general use of this vacant space the appellants insist that such use was permissive as distinguished from adverse or hostile," and that the trial court erred in holding that the public and appellees had a prescriptive right to the use of this vacant space.

After a review of the record before us, we are of the opinion that the great preponderance of the testimony supports the court's finding. There are many decisions of this court upholding decrees granting injunctive relief under facts similar, in effect, to those presented here.

In the case of *McGill* v. *Miller*, 172 Ark. 390, 288 S. W. 932, the property owners in a block so built their fences, walls and buildings as to leave a ten-foot alley which had been used by the property owners for nineteen years. The appellant sought to block the alley by extending his building to his property line, contending that the use of the alley across his land had been merely permissive. In holding that an easement had been acquired by limitation this court said: "The case must turn entirely upon the proof concerning unrestricted use of the alley for a sufficient length of time to give the other owners the right to use the alley as an easement. . . . The testimony of both Todd and Miller shows that the way had been kept open and used for about nineteen years prior to the commencement of this suit. The line of the alley was marked by the fences and a barn along the south side, which constituted an invitation to the public to use it as an alley. It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of the adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use so as to ripen into title by limitation."

Similarly, in *Bond* v. *Stanton*, 182 Ark. 289, 31 S. W. 2d 409, the circumstances under which the alley was opened were that the owners, in building, left ten feet at the rear of their property for an alley which was used for more than seven years and subsequently paved. The appellant sought to extend his building into the alley. In holding that an easement had been created by prescription, the court said:

"The doctrine that the owner of one lot may acquire an easement over the lot of another by the open, notorious, and adverse use thereof under a claim of right for a period of seven years is well settled in this state. Such adverse user is sufficient to vest the claimant with an easement therein. *Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705; *Scott* v. *Dishough,* 83 Ark. 369, 103 S. W. 1153; *Medlock* v. *Owen,* 105 Ark. 460, 151 S. W. 925; and *McGill* v. *Miller,* 172 Ark. 390, 288 S. W. 932. . . .

"The fact that, when the buildings were erected, ten feet were reserved in the rear of them for use as a passageway for wagons in delivering and receiving goods from the respective premises indicates that it was intended for permanent use as a passageway for the owners and tenants of the various buildings, and that this was continued for the period of more than seven years at a time when the various lots were owned by different persons. Thus, under the principles of law above decided and referred to, an easement in favor of the various owners of the lots was acquired before the defendant purchased them."

And in the very recent case of *Robb & Rowley Theaters* v. *Arnold,* 200 Ark. 110, 138 S. W. 2d 773, this court said: "It does not appear definitely just when the public began to use the alley or driveway, but it does reflect that the alley or driveway was being used by the public forty to fifty years before appellants attempted to close the alley or driveway. . . . It is immaterial how and under what circumstances the unrestricted use of a way by the public began. If the use is continuous and unrestricted for the period of limitations, the right becomes permanent and irrevocable. . . ." See, also,

*City of Dumas* v. *Edington,* 201 Ark. 1021, 147 S. W. 2d 997.

We are also of the view that the trial court did not err in overruling appellants' motion to have their grantors made parties to the suit. While appellants' grantors were proper parties, they were not necessary parties.

The record reflects that appellants acquired deed to their property, which included the twenty-foot space in the rear in issue here, in 1940, long after the prescriptive rights of appellees had accrued and that they acquired this property with notice of all rights of appellees.

We quote further from the Robb & Rowley Theaters case, *supra,* as follows: ''An easement once acquired by the public could not be deprived of its easement by a deed from one or two citizens constituting a part of the public. . . . When appellant bought the land by an ordinary inspection or inquiry, he could have found out, not only that the use of the alley had been acquired by the public, but he would have found in the alley manholes and sewers under the ground. . . .''

On the whole case, finding no error, the decree is affirmed.